JUDGE COFER
DELIVERED THE OPINION OR THE COURT.
The appellant was indicted in the Shelby Circuit Court on the 10th day of September, 1877, for the murder of J. W. Cowherd, “committed in manner and form as follows, to wit: The said Samuel Conner in the said county of Shelby, on the 23d day of August, 1875, . . . did feloniously, willfully, and with malice aforethought, kill and slay and murder J. W. Cowherd, by then and there striking him on the head with a club, a bludgeon, a croquet-mallet, a deadly weapon, of which said striking, he, the said Cowherd, did die, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky.”
A trial was had, and the jury returned into court the following verdict, to wit: “We, the jury, find the defendant guilty of killing by willfully striking, and fix his punishment at confinement in the penitentiary for one year.”
The appellant thereupon “ moved the court to enter a judg *717 ment upon the verdict discharging him from custody, and as acquitted of the crime charged against him in the indictment.”
The court overruled the motion, and the appellant excepted and prosecutes this appeal to reverse that order.
After instructing the jury in the law of murder and voluntary manslaughter, the court gave the following, viz: “If, however, the jury believe from the evidence, beyond a reasonable doubt, that at the time and place, and in the manner heretofore stated, the defendant struck said Cowherd willfully, that is, intentionally, when such striking was not done in his necessary, or apparently necessary, self-defense, nor in an attempt to keep or preserve the peace, and that said Cowherd ■ died within six months thereafter, then although they may not believe that defendant designed to produce or cause said Cowherd’s death, they should find him guilty of killing by ‘willfully striking,’ and fix his punishment at confinement in the penitentiary not less than one nor more than six years.”
The verdict shows that it was found under this instruction, which was based on section 2, article 4, chapter 29, General Statutes, which reads as follows, viz: “Any person who shall willfully strike, stab, thrust, or shoot another, not designing thereby to produce or cause his death, and which is not done in self-defense, or in an attempt to keep and preserve the peace, or in the lawful arrest or attempt to arrest a person charged with felony, or misdemeanor, or in doing any other legal act, so that the person struck, stabbed, thrust, or shot, shall die thereof within six months next thereafter, shall be confined in the penitentiary riot less than one nor more than six years. But this section shall not be construed to change the law of malice in respect to any other offense.”
Section 3, article 3, and section 1, article 4, prescribe the punishment of murder and voluntary manslaughter.
Appellant’s counsel contend that the indictment in this case did not authorize the jury to find him guilty of the *718 offense mentioned and described in section 2, article 4. In other words, that that offense is not included in the crime of murder, and is not a degree of the “offense of homicide” within section 263, Criminal Code.
By the rules of the common law felonious homicide was divided into murder, voluntary manslaughter, and involuntary manslaughter.
Voluntary manslaughter is the unlawful, intentional killing of another without malice, and involuntary manslaughter is the killing of another in doing some unlawful act but without an intention to kill, and this may be either where the act is directed against the person killed, or where it is directed against another person or thing and kills one not intended to be hurt. (4 Blackstone, 192.)
The jury, by their verdict, found that the appellant did not intend to kill Cowherd, which was equivalent to finding him not guilty of either murder or voluntary manslaughter, and his motion to be discharged should have been sustained, unless the crime of which the jury found him guilty is included in the crime of murder for which he was indicted, or is a degree of the “offense of homicide.”
Section 262 of the Criminal Code provides, that “Upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and may be found guilty of any offense included in that charged in the indictment.”
Both voluntary and involuntary manslaughter are included in the crime of murder, and one indicted for murder may be convicted of murder or either of the degrees of manslaughter.
For the crime of murder and voluntary manslaughter our statute has prescribed punishments. Sections 3, article 3, chapter 29, General Statutes, for the former, and section 1, article 4, for the latter. But no punishment is prescribed by statute for involuntary manslaughter, unless section 2, *719 article 4, quoted supra, can be construed as defining that crime.
Section 3, article 3, and section 1, article 4, prescribe the punishment for murder and voluntary manslaughter by name, and without attempting any definition; of either of those crimes. We are therefore to look to the common law for the definition of the terms murder and voluntary manslaughter. And we are also to look to the common law for the definition of involuntary manslaughter, and by comparing that definition with the statute (sec. 2, art. 4), to decide whether the offense described in the statute is the same as the common-law offense of involuntary manslaughter.
At the common law there could be neither murder nor voluntary or involuntary manslaughter, unless the person slain died within a year and a day after the injury was received. The offense described in .the statute is not committed unless the person slain shall die of the injury within six months next after it is received.
The statutory offense is therefore not the same as the common-law offense of involuntary manslaughter.
Moreover the statutory offense is limited to cases in which the homicide results from striking, stabbing, thrusting, or shooting, thus omitting to provide for the punishment of unintentional homicides when committed in any other mode.
We are therefore of the opinion that section 2, article 4 was intended to create a new offense and not to provide for the punishment of the common-law offense. And this conclusion is further fortified by the fact that the crimes of murder and voluntary manslaughter are not defined in the statute, but punishment denounced against them by name merely, and the conclusion is not easily avoided that if it had been intended by section 2, article 4 to punish involuntary manslaughter the same course would have been pursued, and the offense would *720 have been punished by name as was done in respect'to murder and voluntary manslaughter.
This construction leaves the punishment of the common-law crime of involuntary manslaughter unprovided for by statute, and to be punished by fine and imprisonment, which is the common-law punishment for offenses for which no punishment is provided by statute. (1 Bishop’s Crim. Law, sec. 940.)
It results from this conclusion that the appellant might, under proper instructions, have been convicted, under the indictment for mm’der, of involuntary manslaughter, and punished by fine and imprisonment. But he could not be convicted under that indictment of the statutory crime of unintentionally killing by willfully striking.
Section 263 of the Criminal Code provides, that “The offenses named in each of the sub-divisions of this section shall be deemed degrees of the same offense in the meaning of” section 262, supra:.
“1. All offenses of homicide.”
The statutory offense of homicide by willfully striking, etc., would seem to be within the letter of this section. But the indictment, the material part of which we have copied in a former part of this opinion, gave no notice to the appellant that the Commonwealth would attempt to prove the statutory offense, unless he was bound under sections 262 and 263, already quoted, to take notice of and be prepared to meet the charge of an offense the facts of which were not stated in the indictment.
Section 12, article 13 of the constitution of this state, declares that in all criminal prosecutions the accused hath a right “ to demand the nature and cause of accusation against I him,” and the legislature has no power to provide by statute that a pei’son indicted for an offense consisting of one state of facts may be tried and convicted under that indictment of an offense consisting of a different state of facts. The crime of murder may be made out if it be proved that the deceased died *721 within a year and a day next after the fatal injury was inflicted. An indictment for murder therefore embraces all the facts necessary to constitute the crime of manslaughter, and notifies the defendant of the exact charge against him. But an indictment for murder gives no notice that any fact will be proved that is not necessary to make out the crime of murder, and hence gives no notice that the Commonwealth will prove that the deceased died within six months after the injury ivas inflicted.
The appellant may have been willing to rely that the Commonwealth could not prove either malice or an intention to kill the deceased; and, not having been notified by the indictment that there would be an attempt to prove that the deceased died within six months, may have omitted to prepare to prove that he did not. Not only so, but it is a well-settled rule of criminal pleading that an indictment for an offense created by statute must describe the offense in the words of the statute, or in words of similar import. • (1 Bishop’s Crim. Proc., see. 360; Com. v. Tanner, 5 Bush, 317; Com. v. Turner, 8 Bush, 2.) And it. is also a rule of such pleading that if the statute creating an offense contains in its enacting clause exceptions, it is necessary to negative such exceptions in the indictment, so as to show that the defendant does not come within any of them. (1 Chitty’s Crim. Law, 233-4; Com. v. Powell, 2 Met. 10; Matthews v. The State, 2 Yerger, 236-7.) And Hale says, “Whenever an offense is made felony or otherwise by act of parliament, the indictment must take in the circumstances which in the body of the act make up the offense.” (2 Hale’s Pleas of the Crown, 171.)
The statute under which the appellant was convicted provides, that he should only be punished in the event the killing was “not done in self-defense, or in an attempt to keep and preserve the peace, or in the lawful arrest or attempt to arrest a person charged with felony or misdemeanor, or in doing any *722 other lawful act,” nor unless the person struck, stabbed, cut, thrust, or shot died within six months next after the injury was received. It is not the act of unintentional killing by the means indicated that constitutes the crime, but it is the killing uuder the circumstances mentioned in the statute.
It results, therefore, that to hold that section 263 was intended to authorize one indicted for murder to be convicted under that indictment of the statutory offense would be to bring that section into conflict with the constitution. It is a rule of construction that an act of the legislature will not be held to have been intended to have a construction that will render it unconstitutional, if the language used admits of any other reasonable interpretation.
The Code of Practice was not designed to define offenses or to prescribe punishments, and when degrees of offenses are spoken of, it should be understood to refer to degrees recognized by the common law, and when “all offenses of homicide” are declared to be degrees of the same offense, it should be held to mean “offenses of homicide” as recognized by the common law, and not to include statutory offenses.
The offense of which the appellant was convicted not being included in the crime of murder for which he was indicted, and his conviction of the statutory offense being equivalent to an acquittal of the crime of murder, and all subsidiary crimes included in it, his motion should have been sustained.
In Terrell’s ease (ante, 253-260) an instruction similar to that we have been considering was given. Terrell was found guilty of voluntary manslaughter and appealed to this court, and assigned that instruction as error. The question made in this case and on which we have decided it, was not made in that case, and we there intimated that the instruction, if framed to meet the provisions of the statute, would have been proper. But on a careful consideration of the question, we are satisfied we were in error on that point; and so much of the *723 opinion in that case ns is in conflict with the views expressed in this opinion is overruled.
Judgment reversed, and cause remanded with direction to sustain the appellant’s motion.